8154-0006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

JAMES C. McELWEE,

                              Plaintiff,

                                                                  10 CIV 00138 (KTD)

   -against-

COUNTY OF ORANGE,

                              Defendant
------------------------------------------------------------------------x

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR
DISMISSAL PURSUANT TO FRCP 12(b)(6) OR
SUMMARY JUDGMENT PURSUANT TO FRCP 56**

                                                       McCABE & MACK LLP
                                                       David L. Posner
                                                       Karen Folster Lesperance
                                                       *Attorneys for Defendant*
                                                       63 Washington Street
                                                       P.O. Box 509
                                                       Poughkeepsie, NY 12602-0509
                                                       Tel: (845) 486-6800

8154-0006

# TABLE OF CONTENTS

**Page**

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument

    POINT I

        Plaintiff is Not Disabled Within the Meaning of the ADA. . . . . . . . . . . . . . . . 1

    POINT II

        Plaintiff is Not a Qualified Individual Within the Meaning
        of the ADA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    POINT III

        Plaintiff Did Not Request, and Was Not Denied, a
        Reasonable Accommodation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8154-0006

## PRELIMINARY STATEMENT

This reply memorandum of law is respectfully submitted by Orange County in further support of its motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or for summary judgment pursuant to Rule 56.

## ARGUMENT

### POINT I

### PLAINTIFF IS NOT DISABLED WITHIN THE MEANING OF THE ADA

Plaintiff seems to take the position that the simple fact that he has a diagnosed developmental disability automatically renders him disabled within the meaning of the Americans With Disabilities Act (the "ADA"). This is simply not the case and the undisputed facts clearly establish that under the standard set forth by the Second Circuit in Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004), he is not is not significantly impaired in the major life activity of interacting and communicating with others. Indeed, plaintiff's own articulate affidavit submitted in opposition to this motion may indeed be the strongest evidence that he is not significantly impaired in this major life activity.

Plaintiff correctly acknowledges that to establish that he is disabled under the ADA he (1) must show that he has a physical or mental impairment, (2) must identify a major life activity that is impacted, and (3) must then show that his physical or mental impairment substantially limits him in that major life activity. He then goes to great lengths to establish that he has either Asperger's Syndrome or pervasive developmental disorder not otherwise specified ("PDD-NOS") (both the complaint and the affidavit of plaintiff's mother contend that plaintiff has Asperger's while plaintiff's treating physician, in his letter and treatment notes, say that plaintiff cannot be diagnosed with Asperger's but rather is more accurately

8154-0006

classified as having PDD-NOS). He then summarily concludes that based on this diagnosis he is disabled under the ADA. However, the fact that he has a diagnosed developmental disability only satisfies the first part of the three-part test set forth above and does not in and of itself entitle him to the protections of the ADA.

Assuming for purposes of this motion, that he has some sort of a developmental disability, the next inquiry is whether that disability significantly impairs a major life activity. Plaintiff identifies the major life activity of communicating and interacting with others. Plaintiff embraces the Second Circuit's decision in <u>Jacques</u>, <u>supra</u>, as the controlling authority in this Circuit as to when a limitation of communication skills rises to the level of a substantial impairment of a major life activity. Pl. Opp. at 12, 14-15 (acknowledging that the <u>Jacques</u> decision is the controlling authority).

The <u>Jacques</u> court was quite clear that a distinction ***must*** be drawn between the ability to communicate and the effectiveness or appropriateness of that communication. It is overwhelmingly obvious that plaintiff is perfectly able to communicate at a basic level, however inappropriate his manner of communicating can at times be. In order to meet the <u>Jacques</u> standard, Plaintiff must show that he is significantly impaired in the mechanical process of speaking and responding to people at a fundamental level. <u>See</u> <u>Jacques</u>, 386 F.3d at 203-04. Yet, in direct conflict with his disability claim, he submits a lengthy and detailed sworn affidavit that is quite complex and advanced in its vocabulary, expressions and ideas. Granted, it is common knowledge that affidavits of a party are typically drafted by their attorney, but for plaintiff to have signed and sworn to this affidavit, he must have been the source of the information contained in it. Plaintiff's attorney must have been comfortable with the fact that Mr. McElwee had read and fully understood the affidavit, or he could not ethically have submitted it in opposition to defendant's motion. Respectfully, no one with a

8154-0006

severe limitation in their ability to communicate at a basic, fundamental level, could have understood and been able to swear to the ideas expressed in that affidavit.

Plaintiff contends that defendants are "splitting hairs" by drawing a distinction between himself -- who clearly can and does "initiate contact with other people and respond to them [and] go among other people" (Jacques, 386 F.3d at 203) -- and those who have a "severe[] limit[ation of] the fundamental ability to communicate with others . . . at the most basic level of these activities."  But the law requires these precise distinctions be drawn, and it quite clear that individuals like Mr. McElwee, "whose basic ability to communicate with others is not substantially limited but whose communication is inappropriate, ineffective, or unsuccessful" are not disabled under the ADA.  Id.

Finally, plaintiff contends by a single sentence in his opposition papers that "plaintiff is also unable to adequately care for himself, manage his medical needs or work an everyday job."  (Pl. Opp. at 13).  This was not alleged in the complaint, nor has it ever been asserted in the prior briefing.  Plaintiff did not expound on this in any way, and certainly did not provide sufficient evidence that plaintiff is significantly impaired in a major life activity in this regard.  Certainly plaintiff was able to perform the duties of his volunteer janitorial position at Valley View for many years without any known limitations on his ability to complete the tasks he was assigned or to understand those assignment.

### POINT II

### PLAINTIFF IS NOT A QUALIFIED INDIVIDUAL WITHIN THE MEANING OF THE ADA

To establish a *prima facie* case under the ADA, plaintiff must first establish that he is a qualified individual with a disability. 42 U.S.C. §12132; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84-85 (2d Cir.), corrected, 511 F.3d 238 (2d Cir. 2004); Harris, 572

F.3d at 73-74; Tylicki, 297 Fed. Appx. at 66-67. For all the reasons previously discussed, plaintiff's complaint fails to allege facts that would establish that he has a disability. However, even if he is disabled under the ADA, he is not "otherwise qualified" for his volunteer position on the basis of his behavior towards numerous female employees, nursing students and visitors, as well as his display of rage which caused Ms. Darwin to have concerns as to whether he might pose a risk of physical harm. (Darwin EBT at 28).

It is well established that such misconduct will render an individual not "otherwise qualified," even if the misconduct results from an alleged disability. See Defendant's Supplemental Memo of Law in Support of Motion to Dismiss or For Summary Judgment ("Def. Mem.") at 18-22, and cases cited therein. In attempting to discredit this clearly established principal, plaintiff, in his opposition papers, confuses the defense available under the ADA to an employer when an employee poses a direct threat in the workplace, with the element of a prima facie case which requires plaintiff to show that he is a "qualified individual."

Plaintiff relies on Sista v. CDC Ixis North America, 445 F.3d 161 (2d Cir. 2006), contending that plaintiff does not have violent propensities and did not pose a direct threat in the workplace. As plaintiff aptly points out, however, this is a defense available to employers in the employment context after plaintiff has established a *prima facie* case. Defendants are not claiming such a defense by this motion. Sista has no bearing on the cases relied upon by the County in support of its motion, which hold that misconduct renders an individual not otherwise qualified, thereby defeating an essential element of plaintiff's prima facie case. See Def. Mem. Point I.D. See also See, e.g., Jacques v. DiMarzio, Inc., 386 F.3d 192, 203 (2d Cir. 2004) (noting that the law will not force an employer faced with inappropriate conduct that is attributed to a mental impairment "to choose between the risk of litigating that

employee's ADA claim, or the risk of litigating the claims of others who experience an unchecked hostile work environment as a result of that employee's behavior.")

Plaintiff contends that he must have been a qualified individual because he was accepted into the volunteer program initially and continued to volunteer there for many years. Defendant is not claiming that he was not qualified to perform the tasks of his volunteer position. What defendant claims, and the case law supports, is that due to plaintiff's inappropriate behavior towards female employees of Valley View he is not an "otherwise qualified individual" under the ADA. His behavior (and not any claimed disability) was the impetus for the decision to terminate his volunteer position, and it was at the point that he began to make female employees of Valley View uncomfortable that he ceased meeting the standards of eligibility for the program, and ceased being a "qualified individual."

Indeed, the fact that he was hired as a volunteer and retained for years is evidence of the fact that Valley View did not discriminate against him on the basis of his having Asperger's Syndrome; rather, they made the decision that they did because of his actions towards Martha Thompson and others. See, e.g., Tylicki v. St. Onge, 297 Fed. Appx. 65, 67 (2d Cir. 2008) (in finding that student's expulsion from college was based on misconduct and not on his disability, the court noted that he had been originally admitted and attended classes and so had not been denied admission or re-admission because of his disability).[1]

Plaintiff's volunteer services were not terminated "because of" his disability, and his termination was not discriminatory based on his claimed disability. It is clear from the testimony of Robin Darwin that she made the decision based on her conclusion after a

---

[1] Plaintiff's attempt to distinguish Tylicki as being particular to the Individuals with Disabilities in Education Act ("IDEA") falls flat. While it is true that the *reasonable accommodation* that plaintiff sought under the ADA was a hearing that the IDEA entitled him to, the Court's analysis of whether his misconduct rendered him "not otherwise qualified" was under the ADA and the Rehabilitation Act.

8154-0006

thorough investigation that the female employees she interviewed were experiencing a hostile work environment, that the County and Valley View were facing potential liability, that she had concerns about the safety of the complaining females, and that she herself was disturbed and frightened by the behavior she had seen Mr. McElwee exhibit during the course of her discussions with him. (Darwin EBT at 28-29). Where termination follows a reasonable investigation based on alleged misconduct, courts will not question the reasonableness of an employer's personnel and disciplinary decisions or the methods by which they arrived at those decision, in the absence of independent evidence that the process was tainted by discriminatory motive. See Waters v. Churchill, 511 U.S. 661, 676 (1994); Ascione v. Pfizer, Inc., 312 F.Supp.2d 572, 578; Logan v. Caterpillar, Inc., 246 F.3d 912, 920 (7th Cir. 2001). There are no such allegations or evidence here.

Plaintiff's volunteer position was terminated because he was making numerous female employees and students feel uncomfortable, subjecting Valley View and the County to liability, and because his behavior had sparked a fear that he was potentially violent or may cause physical harm to himself or others. It was not the result of discrimination and the County is entitled to summary judgment accordingly.

## POINT III

### PLAINTIFF DID NOT REQUEST, AND WAS NOT DENIED, A REASONABLE ACCOMMODATION

Plaintiff continues to assert that defendant had some obligations to sit Mr. McElwee and all of the complaining females down in a room together and talk about his behavior, and "educate" the females about his developmental disability. As an initial matter, Ms. Darwin never knew that Mr. McElwee had Asperger's or PDD-NOS or any other physical or mental condition. (Darwin EBT at 12-14). She thought that "he may have appeared to look a little

slow" (Darwin EBT at 12) but was not aware of any specific condition or diagnosis, and certainly was never aware that he needed any kind of accommodation to be able to perform his volunteer tasks. To the contrary, as far as she knew there were never any issues with the performance of his duties. (Darwin EBT at 10).

The ADA does not require defendant to educate and counsel employees to "be more understanding" of a co-worker's harassing actions simply because he has a disability, and to tolerate conduct which is likely actionable under Title VII or other laws prohibiting sexual harassment in the workplace, simply because the perpetrator of that otherwise unlawful conduct is acting that way because of a disability. That is simply not the law and the ADA imposes no such burdens. Nor does the ADA require that defendant react to plaintiff's conduct towards its employees (or volunteers) less harshly than it would react to the same conduct from a non-disabled individual. See Def. Mem. at Point I.D., and cases cited therein. See also Harris v. Mills, 572 F.3d 66 (2d Cir. 2009).

Ms. Darwin was asked during her deposition whether she had considered putting the female complainants and Mr. McElwee in a room together to discuss the behavior, and she responded that she had not, because her investigation had already led her to conclude that these women were suffering a hostile work environment, and that she as an administrator had concerns based on her own personal observations that Mr. McElwee may have violent propensities. (Darwin EBT at 28-30). Additionally, several of the women had said they did not feel comfortable around Mr. McElwee and went out of their way to avoid him, and she did not want to increase the risk of potential liability by then making these women sit down with him. She had witnessed him burst into angry flashes of rage when confronted by the allegations from her, and did not want to risk subjecting these women to those same angry outbursts. (Darwin EBT at 15-16, 19, 29). Certainly she was not required to do as as a

8154-0006

"reasonable accommodation" by the ADA.

Plaintiff responds only by arguing that the request was reasonable because "the record does not compel the conclusion that plaintiff is a violent man whose dangerous threats could not be reasonably accommodated." (Pl. Opp. at 20). The ADA does not require providers of public services or employers, in general to find a way to "reasonably accommodate" dangerous threats. Valley View was not required to educate the females who it concluded were the victims of a hostile work environment, nor does the ADA require that these women tolerate harassment because their harasser did not do it "intentionally" (Pl .Opp. at 20) but because of a developmental disability.

## CONCLUSION

For all the foregoing reasons, and for all the reasons set forth in defendant's moving papers, Plaintiff's complaint in this action fails as a matter of law. Defendant respectfully requests that the complaint be dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, that Defendant be granted summary judgment pursuant to Federal Rule of Civil Procedure 56, and that this Court order such other and further relief as it deems just and proper.

Dated: Poughkeepsie, New York
         February 7, 2011

_____
DAVID L. POSNER (0310)